IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INGEVITY CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| BASF CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## INGEVITY CORP.'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ingevity Corporation ("Ingevity"), by and through its undersigned attorneys, alleges the following for its Complaint against Defendant against BASF Corporation ("BASF"), upon knowledge, information, and belief:

## NATURE OF THE ACTION

1.      This is an action for injunctive relief and damages arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

## THE PARTIES

2.      Plaintiff Ingevity is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 5255 Virginia Avenue, North Charleston, SC 29406 USA.

3.      Upon information and belief, Defendant BASF is a company organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue Florham Park, NJ 07932 USA.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)

and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

5.      This Court has personal jurisdiction over BASF because BASF is a Delaware

corporation; in addition, upon information and belief, BASF conducts, and has conducted,

continuous, systematic, substantial, and routine business within Delaware.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 and 28 U.S.C.

§ 1400(b) at least because BASF is incorporated in, and thus resides in, the state of Delaware.

**BACKGROUND**

7.      For over 50 years, Ingevity operated as a division of Westvaco Corporation, and

then of its successors MeadWestvaco Corporation and WestRock Company.  In May 2016,

Ingevity completed its separation from its corporate parent WestRock Company.  Ingevity is

currently a global leader in the manufacture of specialty chemicals and high-performance

activated carbon materials.

8.      Activated carbon is a form of carbon that is processed to have small pores that

increase the material's total surface area.  This increased surface area promotes "adsorption"—

the adhesion of a substance from a gas or liquid to a surface.  Activated carbon has numerous

practical uses.  For example, gasoline is known to emit vapors, including volatile organic

compounds ("VOCs"), which can be harmful to the environment and result in a loss of fuel.

Fuel vapor canister systems equipped with activated carbon can be used to adsorb gasoline

vapors in an automobile to prevent them from being emitted into the atmosphere.  The adsorbed

gasoline vapors can be purged from the activated carbon and directed to the engine where the

gasoline vapors are then used as supplemental fuel for the vehicle.

9.     Globally, Ingevity's products have collectively prevented over 20,000 metric tons of VOC emissions each day from being emitted into the atmosphere and have returned the equivalent of eight million gallons of gasoline each day as supplementary fuel for vehicles.  For example, Ingevity manufactures various types of activated carbon material that can be used in fuel vapor canisters.  Through decades of innovation, Ingevity has been able to offer products that have advantages over its competitors' products.

10.    Upon information and belief, BASF is currently manufacturing, testing, and marketing emission control systems for fuel canisters, which BASF refers to publicly as the EvapTrap[TM] XC.[1]  Upon information and belief, the EvapTrap XC is a hydrocarbon scrubber system that adsorbs gasoline vapor emissions.  Upon information and belief, a diagram of the EvapTrap XC system is provided below.



[1]  *See* http://www.automotive.basf.com/basf-coating-based-solutions-meet-zero-evap-standards/ (last visited July 18, 2018).

11.     Upon information and belief, BASF is manufacturing, testing, and marketing a new generation of the EvapTrap XC, referred to herein as the "New EvapTrap XC." The New EvapTrap XC purportedly operates as a bleed trap that can be used as part of, or in conjunction with, a fuel vapor canister. Upon information and belief, BASF, its customers, and its vendors have performed and are currently performing testing for the New EvapTrap XC in conjunction with a fuel vapor canister. Such testing is referred to herein as "New EvapTrap XC Testing." Upon information and belief, this New EvapTrap XC Testing includes testing the operation of evaporative emissions control systems that include at least one New EvapTrap XC operating as a part of, or in conjunction with, a fuel vapor canister.

## PATENT-IN-SUIT

12.     Ingevity is the owner by assignment of U.S. Patent No. RE38,844 ("the '844 Patent"), entitled "Method for Reducing Emissions From Evaporative Emissions Control Systems." A copy of the '844 Patent is attached as Exhibit A. The '844 Patent is a reissue of U.S. Patent No. 6,540,815 ("the '815 Patent"). At the time that the application that led to the '844 Patent was filed, the concern in the art was "the hydrocarbon left on the carbon adsorbent itself as a residual 'heel' after the regeneration (purge) step." '844 Patent, 2:42-44. These emissions "typically occur when a vehicle has been parked and subjected to diurnal temperature changes over a period of several days, commonly called 'diurnal breathing losses.'" *Id.*, 2:44-47. The inventions of the '844 Patent "sharply reduc[e] diurnal breathing loss emissions from evaporative emissions canisters by the use of multiple layers, or stages, of adsorbents." *Id.*, 3:43-45.

## COUNT FOR INFRINGEMENT OF U.S. PATENT NO. RE38,844

13.     Ingevity incorporates by reference Paragraphs 1-12 of this Complaint as if fully set forth herein.

14.     The '844 Patent is valid and enforceable.

15.     Upon information and belief, BASF has and continues to infringe the '844 Patent directly under 35 U.S.C. § 271(a), indirectly under 35 U.S.C. § 271(b) and (c), and by providing component(s) under 35 U.S.C. § 271(f).

16.     Ingevity has been irreparably harmed by BASF's acts of infringement, and will continue to be harmed unless and until BASF's acts of infringement are enjoined and restrained by order of this Court.  Ingevity has no adequate remedy at law and is entitled to a preliminary and permanent injunction against BASF.

### Direct Infringement (35 U.S.C. § 271(a))

17.     BASF has directly infringed and continues to directly infringe at least independent claims 1, 18, 31, and 43 of the '844 Patent, literally and/or under the doctrine of equivalents, by, e.g., conducting the New EvapTrap XC Testing.  Upon information and belief, the New EvapTrap XC exhibits "an incremental adsorption capacity [at 25° C.] of less than 35 g n-butane/L between vapor concentrations of 5 vol % and 50 vol % n-butane," as recited by independent claims 1, 18, 31, and 43 of the '844 Patent.  Upon information and belief, the New EvapTrap XC Testing involves automobiles and fuel vapor canisters that contain the New EvapTrap XC and meet the remaining limitations of at least claims 1, 18, 31, and 43 of the '844 Patent.  For example, as recited in claim 1, fuel vapor canisters currently under development for use in automobiles to be sold in the United States must have "an initial adsorption volume [with an] incremental adsorption capacity at 25° C. of greater than 35 g n-butane/L between vapor concentrations of 5 vol % and 50 vol % n-butane" for the canisters to function correctly and

comply with U.S. emission standards, in addition to a "subsequent adsorbent volume" such as the New EvapTrap XC with a lower incremental adsorption capacity.

### Indirect Infringement

18.     BASF had actual notice of the '844 Patent, at least as of the filing date of this Complaint.  In addition, upon information and belief, BASF has had notice of the '844 Patent since before this Complaint was filed.  For example, and without limitation, BASF's patents have cited the '815 Patent.  *See, e.g.*, U.S. Patent Nos. 7,531,029, 7,578,285, 7,753,034, 8,372,477.

19.     BASF actively induces infringement by others (*e.g.*, its customers and testing laboratories) of at least claims 1, 18, 31, and 43 of the '844 Patent.  For example, upon information and belief, BASF's customers directly infringe, literally and/or under the doctrine of equivalents, when they engage in New EvapTrap XC Testing in the United States, as set forth above.  BASF knowingly induces such infringement and possesses specific intent to encourage such infringement at least by providing its New EvapTrap XC to customers for the purpose of enabling them to conduct New EvapTrap XC Testing and to incorporate the New EvapTrap XC into automobiles and fuel vapor canisters that infringe when made and/or used.

20.     On information and belief, BASF also contributes to the infringement by others of claims 1, 18, 31, and 43 of the '844 Patent, including its customers, literally or under the doctrine of equivalents, by importing the New EvapTrap XC and/or or offering it to customers for New EvapTrap XC Testing, as a purported replacement for Ingevity's products.  The New EvapTrap XC constitutes a material part of the '844 Patent because it exhibits "an incremental adsorption capacity [at 25° C.] of less than 35 g n-butane/L between vapor concentrations of 5 vol % and 50 vol % n-butane," as recited in the claims, and constitutes the "flat or flattened adsorption isotherm" recommended by the '844 Patent.  *See* '844 Patent Abstract.  As set forth above with

respect to inducement, BASF knows of the invention of the '844 Patent and knows that the New EvapTrap XC is made for, or adapted to use in, the invention of the '844 Patent.  Finally, the New EvapTrap XC has no substantial non-infringing use.

### Infringement Under 35 U.S.C. § 271(f)

21.     Upon information and belief, BASF is liable for infringement under 35 U.S.C. § 271(f)(1) for supplying or causing to be supplied in or from the United States all or a substantial portion of the components of canisters used in New EvapTrap XC Testing, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside the United States in a manner that would infringe claims 31 and 43 of the '844 Patent.  For example, upon information and belief, BASF supplies or causes to be supplied the New EvapTrap XC from the United States to customers abroad and induces such customers to combine two or more New EvapTrap XCs in fuel vapor canisters to conduct New EvapTrap XC Testing.

22.     Upon information and belief, BASF is liable for infringement under 35 U.S.C. § 271(f)(2) for supplying or causing to be supplied in or from the United States one or more components of canisters used in New EvapTrap XC Testing that are especially made or especially adapted for use in New EvapTrap XC Testing and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside the United States in a manner that would infringe at least claims 31 and 43 of '844 Patent if such combination occurred within the United States.  For example, upon information and belief, BASF supplies or causes to be supplied from the United States the New EvapTrap XC.  Upon information and belief, the New EvapTrap XC is especially adapted for use in evaporative emissions control systems and emissions control canisters during EvapTrap Testing that infringe at least claims 31 and 43 of the

'844 Patent and is not a staple article or commodity of commerce suitable for substantial noninfringing use.  Upon information and belief, BASF knows that the New EvapTrap XC is so made and adapted.  Upon information and belief, BASF intends that the New EvapTrap XC will be combined outside of the United States in evaporative emissions control systems and emissions control canisters that would infringe at least claims 31 and 43 of the '844 Patent if such combination occurred within the United States.

### Willfulness

23.     On information and belief, BASF has willfully infringed the '844 Patent by acting with knowledge that its activities constituted infringement of the '844 Patent.  Upon information and belief, BASF's New EvapTrap XC has deliberately copied the physical design of Ingevity products that practice the '844 patent.  In addition, BASF has repeatedly cited Ingevity's original '815 patent in its own patents (*see* U.S. Patent Nos. 7,531,029, 7,578,285, 7,753,034 & 8,372,477).  Indeed, the '815 patent and '844 patent are well known in the industry.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant and respectfully requests the following relief:

a. A judgment that BASF has infringed one or more claims of the '844 Patent under 35 U.S.C. § 271;

b. Granting a preliminary and permanent injunction enjoining and restraining BASF and its officers, directors, agents, servants, employees, attorneys, and all others in active concert or participation with BASF, from making, using, offering to sell, selling, or importing into the United States any product, and/or using, offering to sell, or selling any service, that falls within the scope of any claim of the '844 Patent;

c. Compensation for all damages caused by BASF's infringement of '844 Patent;

d.   Enhancement of Ingevity's damages up to three times their amount under 35 U.S.C. § 284;

e.   Granting Ingevity pre- and post-judgment interest, together with all costs and expenses;

f.   Entering a judgment that BASF's infringement of the Patent-in-Suit has been willful;

g.   A declaration that this case is exceptional within the meaning of 35 U.S.C. § 285 and awarding reasonable attorneys' fees, costs and disbursement incurred as a result of this action; and

h.   Such other and further relief as the Court deems just and proper.


/s/ Karen E. Keller
Karen E. Keller (No. 4489)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
OF COUNSEL:                                    (302) 298-0700
Jeffrey T. Thomas                              kkeller@shawkeller.com
GIBSON, DUNN & CRUTCHER LLP                    *Attorneys for Plaintiff*
3161 Michelson Dr.
Irvine, CA 92612
(949) 451-3800

Frederick S. Chung
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300

Dated: July 19, 2018